IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-03115-MEH

NATHAN GRIBOWSKI,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

    Defendant.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is Defendant State Farm Mutual Automobile Insurance Company's ("Defendant") Motion for Partial Summary Judgment ("Motion"). ECF 24. The facts of this case involve a motor vehicle accident and subsequent insurance claim. ECF 9. Based on the record herein and for the reasons that follow, the Motion is **denied in part and granted in part.**

## FINDINGS OF FACT

    The Court makes the following findings of fact, viewed in the light most favorable to the non-moving party in this matter, Plaintiff Nathan Gribowski ("Plaintiff"). The Court also does not consider evidence submitted by either Party, which is not material to the Motion, properly objected to, and/or inadmissible. The following material facts are undisputed.

1.    On January 13, 2017, Plaintiff was in a motor vehicle accident. ECF 9 at ¶ 11.

2.    On February 1, 2017, Defendant estimated the actual cash value of Plaintiff's loss to be $17,979. ECF 26-5 at 1.

3. On November 19, 2018, Dr. James Bainbridge evaluated Plaintiff and found that "he has sustained a permanent injury, with permanent impairment related to that accident." ECF 26-2 at 2.

4. Plaintiff had an insurance policy with State Farm at the time of the accident, that provided $100,000 in underinsured motorist coverage per person per accident. ECF 24-2 at 1.

5. On March 13, 2020, Plaintiff's counsel sent Defendant confirmation that the at-fault driver's insurance policy had a limit of $25,000 for bodily injury liability, and that Plaintiff recovered $25,000 from it. *Id.* at 5.

6. On March 16, 2020, Defendant extended a settlement offer of $1,281.75 to Plaintiff. ECF 24-5 at 1. Thereafter, Plaintiff's counsel provided Defendant with additional medical documentation for the Plaintiff.

7. On May 18, 2020, Defendant extended a settlement offer of $4,036.75 to Plaintiff. ECF 24-5 at 2.

8. On August 3, 2021, Plaintiff's counsel sent Defendant an email, which totaled Plaintiff's economic damages to $26,404.25. ECF 26-4 at 1. That email also contained a summary of Plaintiff's medical bills and enclosed supplemental medical records and bills. *Id.* Thereafter, State Farm Claim Specialist Alyssa Cottrell informed Plaintiff's counsel that the documents contained in the email sent on the 3rd of August were inaccessible. ECF 24-1 at 9.

9. Then, on August 26, 2021, Defendant received "Digital media correspondence" from Plaintiff's counsel and uploaded it to the claim file. ECF 24-4 at 10.

10. Defendant's "File Notes" indicate that on September 8, 2021, State Farm Claims Associate Christen Stephens completed his preliminary review of Plaintiff's bills and submitted

records, removed duplicates, and advised the claim specialist that these documents were ready to be reviewed. ECF 24-1 at 8.

11.     On September 20, 2021, State Farm Claims Specialist Adriana Douglas ("Douglas") updated the Auto Injury Evaluation based on her review of the information she received. ECF 24-3 at 3. Under "General Damages Information," she noted "[r]emoved futures; CS considering care through Jan of 2020 which is three years post MVA; Questions re: MOI and causation for continued low back and hip pain and its relation to the MVA." *Id.* at 9.

12.     Douglas also noted, "CS has reviewed the new info presented by the [insured's attorney]. The insured has been treating since 5 days post MVA for low back complaints. over 60 visits at PT. CS questioning the [diagnosis] as related to the MVA as well as extensive [treatment] sought. Please advise if ok to proceed with a utilization review to better understand." ECF 24-1 at 7. Douglas' Team Manager Deb Sawyer ("Sawyer") authorized procuring a medical expert "to assist [Defendant] in determining what injuries and treatment are related to this loss." *Id.*

13.     Douglas calculated a "Net Evaluation Range" for Plaintiff's covered damages of $1,036.75 to $8,036.75. ECF 24-2 at 5.

14.     On September 21, 2021, Douglas sent a letter to Plaintiff's counsel, which stated that she had questions about the necessity of his continued care and whether it related to the motor vehicle accident. ECF 24-5 at 3. Douglas also stated that she would be "sending bills and records for a utilization review to assist with understanding of the treatment and diagnosis." *Id.*

15.     On September 27, 2021, Plaintiff's counsel responded to Defendant's letter, and noted "[i]t has now been 7 weeks since we sent you the supplemental RFE, and it appears that it is going to be a while longer before we receive your response. This is not consistent with State

3

Farm's obligation not to unreasonably delay the processing and payment of UIM claims under CRS 10-3-1115(1)(a)." ECF 26-1 at 2. He asked Defendant to "expedite this review and present [Plaintiff] with your evaluation without further delay." *Id.*

16. On October 1, 2021, Sawyer noted that Plaintiff's counsel did not seem to understand that the request for the utilization review was a response to "the demand." ECF 24-1 at 5. Sawyer instructed Douglas to "[p]resent an offer based on what we believe is related to the loss and advise [insured's attorney] that once the [utilization review] is received, we will share it with them and that it may increase or decrease our offer." *Id.*

17. On October 5, 2021, Douglas sent a letter to Plaintiff's counsel saying that she was currently offering $1,100 to resolve the claim. ECF 24-5 at 4. Douglas' letter also stated that a utilization review had been requested and that "[o]ur evaluations and offers of settlement are fluid and can change in either direction at any time based on new information received." *Id.*

18. On October 15, 2021, Douglas reviewed Dr. William Howarth's ("Dr. Howarth") utilization report. ECF 24-1 at 3. Dr. Howarth concluded that the bulk of Plaintiff's medical treatment was unrelated to the accident, that his care was excessive, and that "based on the claimant's complaints and severity of the issues, temporal seeking of care it does not seem related to the MVA." ECF 24-6 at 4. Douglas noted that "CS was considering 3 years of [treatment] as related and was not considering the need for future care" but that the utilization reviewer "is of the opinion that 6-12 sessions of conservative care seem reasonable." ECF 24-1 at 3. Douglas "reccomend[ed] sending a copy of the report to the [insured's attorney] and, in an effort to resolve, making an offer of the low end of the [range of value]." *Id.* Sawyer agreed with Douglas' recommendation. *Id.*

19.     On October 18, 2021, Douglas sent a letter to Plaintiff's counsel and attached a copy of the utilization review report. ECF 24-5 at 6. Douglas advised, "[t]he opinion of the doctor is that 6-12 sessions of conservative care seem reasonable," but also stated that Defendant was prepared to consider "3 years of treatment." *Id.* Defendant reiterated its prior settlement offer of $1,100. *Id.*

20.     On October 20, 2021, Plaintiff filed suit. ECF 1-1.

## **LEGAL STANDARDS**

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); *see also Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005).

## ANALYSIS

Defendant argues that it is entitled to partial summary judgment as to Plaintiff's extracontractual claims under the Colorado statutes for unreasonable denial of benefits, bad faith breach of an insurance contract, and bad faith settlement practices. Mot. at 2; Reply at 1.

**I.  Legal Authority**

    **A.  Statutory Claims**

Plaintiff's Second Claim for Relief alleges "Unreasonable Denial of Benefits Under C.R.S. Sections 10-3-1115 and 10-3-1116." Amended Compl., ECF 9 at 10.. The Fourth Claim for Relief alleges "Bad Faith Claim Settlement Practices Under 10-3-1104(1)(h)." *Id.* at 11. As to this last claim, Defendant argues, and Plaintiff does not dispute, that the Unfair Competition Deceptive Practices Act, of which Colo. Rev. Stat. § 1104(1)(h) is a part, does not create a private right of action. *Am. Fam. Mut. Ins. Co. v. Allen*, 102 P.3d 333, 344 (Colo. 2004) ("While the Unfair Claims Practices Act does not establish a standard of care actionable in tort, it may be used as valid, but not conclusive, evidence of industry standards . . . ."). Therefore, the following analysis will consider only a single statutory unreasonable denial of benefits.

The "triggering event [for statutory bad faith] is an allegedly unreasonable delay or denial of insurance benefits." *Power Eng'g Co. v. Fed. Ins. Co.*, No. 21-cv-00345-CMA-NRN, 2022 WL 16572308, at *3 (D. Colo. Nov. 1, 2022). "The only element at issue in the statutory claim is whether an insurer denied benefits without a reasonable basis." *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 760 (Colo. App. 2012). And, the insurer must pay any undisputed portions of the insured's claims, even as other portions of the insured's claim remain in dispute. *State Farm Mut. Auto. Ins. Co. v. Fisher*, 418 P.3d 501, 506 (Colo. 2018) (*Fisher II*).

For Plaintiff's statutory claims to survive summary judgment, Plaintiff must demonstrate unreasonable conduct by Defendant in its denial of a policy claim or refusal to pay benefits. In Colorado, acting "without a reasonable basis" has been construed to mean pursuing a groundless position that is not supported by credible evidence. *See Bd. of Cnty. Comm'rs v. Auslaender*, 745 P.2d 999, 1001 (Colo. 1987). The party asserting the claim has the burden of proof, and thus the

burden of demonstrating the unreasonableness of the insurer's actions lies with the insured. *See Pham v. State Farm Mut. Automobile Ins. Co.*, 70 P.3d 567, 572 (Colo. App. 2003). Moreover, "the reasonableness of an insurer's conduct [in a bad faith case] is measured by objective standards of conduct in the insurance industry." *Reid v. Geico Gen. Ins. Co.*, 499 F.3d 1163, 1169 (10th Cir. 2007) (citation omitted). Some standards are expressly stated in statute. For example, Colo. Rev. Stat. § 10-3-1104(1)(h) requires an insurer to conduct a reasonable investigation based upon all available information before refusing a claim and to provide a prompt and reasonable explanation when denying a claim or making a settlement offer. Insurers may not compel insureds to recover their covered benefits through litigation by offering the insured substantially less than he or she ultimately recovers either. *See* Colo. Rev. Stat. § 10-3-1104(1)(h)(VII) (2021).  Caselaw is another source of industry standards. "In conducting [an] investigation, the insurer must promptly and effectively communicate with anyone it was reasonably aware had . . . information pertaining to the handling of [a plaintiff's] claim." *Peden v. State Farm Mut. Auto. Ins. Co.*, 841 F.3d 887, 891 (10th Cir. 2016). The insurer must search for facts that both support and contradict the insured's claim with equal vigor, and it must discover all facts essential to understanding the insured's medical condition including the injury's effects on that person's employment and future earning capacity. *Id*. To sum up the standard, the "question is whether a reasonable insurer under similar circumstances would have denied or delayed payment of the claim." *Thompson v. State Farm Mut. Auto. Ins. Co.*, 457 F. Supp. 3d 998, 1003 (D. Colo. 2020) (citation omitted).

"Whether an insurer's conduct was reasonable under the circumstances is ordinarily a question of fact for the jury when conflicting evidence exists. . . .  However, in appropriate

circumstances, as when there are no genuine disputes of material facts, reasonableness may be decided as a matter of law." *Thompson*, 457 F. Supp. 3d at 1003 (citations omitted).

B. <u>Common Law Bad Faith Claim</u>

Plaintiff's Third Claim for Relief alleges a common law bad faith breach of contract. Amended Compl., ECF 9 at 10. Before the Colorado legislature adopted the statutes cited above, Colorado law imputed on every insurance contract a covenant of good faith and fair dealing, the breach of which may constitute a tort. *Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010). By recognizing common law bad faith in the first-party context, Colorado law seeks to create "a reasonable balance between the right of an insurance carrier to reject a non-compensable claim submitted by its insured and the obligation of such carrier to investigate and ultimately approve a valid claim." *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 496 (Colo. App. 2011).

Two elements define the tort of bad faith under the common lawt. To prevail, Plaintiffs first must prove that Defendant acted unreasonably under the circumstances. *Eppich v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-01697-PAB-MEH, 2009 WL 3162245, at *6 (D. Colo. Sept. 30, 2009). In other words, Defendant is liable if it unreasonably refused to pay or delayed payment of Plaintiff's insurance claim and failed to act in good faith. *Sanderson*, 251 P.3d at 1217. The second element requires Plaintiff to establish that Defendant either knowingly or recklessly disregarded the validity of his insurance claim. "[A]n insurance company recklessly disregards the unreasonableness of its coverage position when it acts with knowledge that its position lacks a reasonable basis or when it is deliberately indifferent to information concerning

9

the claim." *Vansky v. State Farm Auto. Ins. Co.*, No. 20-cv-01062-PAB-NRN, 2022 WL 900160, at *9 (D. Colo. Mar. 28, 2022). It is the addition of this second element that differentiates the common law version of insurance bad faith from the statutory version. *Peden*, 841 F.3d 887, n.3 (10th Cir. 2016).

The common law tort for the bad faith breach of an insurance contract may encompass the insurer's entire course of conduct cumulatively. *Haynes v. Allstate Fire & Cas. Ins.*, No. 19-cv-02397-STV, 2020 WL 816043, at *6 (D. Colo. Feb. 18, 2020). Moreover, an insurer can be held liable even if it eventually pays the insured's claim. *Sanderson*, 251 P.3d at 1217. In sum, "an insurer will be found to have acted in bad faith only if it has intentionally denied, failed to process, or failed to pay a claim without a reasonable basis." *Zolman*, 261 P.3d at 497 (emphasis added).

## II.   Factual Record on Defendant's Conduct.

The first issue before the Court is whether Plaintiff has offered sufficient evidence to dispute the reasonableness of Defendant's conduct in evaluating and attempting to settle Plaintiff's claim.  The record establishes the following facts. On March 16, 2020, Defendant offered to settle Plaintiff's claim for $1,281.75, representing the amount of damages that remained after the tortfeasor's $25,000.00 policy benefit. ECF 24-5 at 1. Then, on May 18, 2020, Defendant increased its offer to $4036.75. *Id.* at 2. Defendant actively communicated with Plaintiff's counsel and investigated the claim during this period of time. ECF 24-1 at 12. Defendant evaluated Plaintiff's claim and determined the "Net Evaluation Range" for Plaintiff's claim to be between $1,036.75 and $8,036.75. ECF 24-2 at 5.

On August 3, 2021, Plaintiff's counsel provided additional information to the Defendant regarding his claim, including supplemental medical records and bills. Resp. at 8; ECF 26-4 at 1. After a technical error delayed Defendant's receipt of these documents until August 26, 2021, Defendant investigated whether the totality of Plaintiff's injuries was caused by the motor vehicle accident. ECF 24-1 at 7. Defendant lowered its settlement offer to $1,100.00 on October 5, 2021. ECF 24-5 at 4. The next day, Defendant sought an alternative medical report from Dr. Howarth and reviewed it on October 15, 2021. ECF 24-6 at 1; ECF 24-1 at 3. On October 18, 2021, Defendant reiterated its $1,100.00 settlement offer to Plaintiff. ECF 24-5 at 6.

The parties dispute whether the totality of Plaintiff's injuries is attributable to the motor vehicle accident. However, that dispute concerns Plaintiff's breach of contract cause of action. At issue here are Plaintiff's extracontractual causes of action and, particularly, the manner in which Defendant handled Plaintiff's policy claim.

In arguing that a jury could find Defendant acted unreasonably in the way needed to show bad faith, Plaintiff points the Court to several aspects of his claim. First, Plaintiff states that it was unreasonable for Defendant not to consider Plaintiff's considerable vehicle damage, totaling $17,979.00, in evaluating Plaintiff's claims for personal injuries. Resp. at 8. He cites Plaintiff's Exhibit 5, which is an email to Plaintiff from Defendant. ECF 26-5 at 1. In that email, Defendant states that the actual cash value of Plaintiff's vehicle was determined to be $17,979.00. *Id.* Defendant points out that the "claim specialist noted the severity of the impact multiple times in the evaluation." Reply at 4 (citing ECF 24-2). Furthermore, the specialist noted that the impact was rated as "Moderate to severe, [Vehicle 1] a [total loss], air bags deployed."

11

ECF 24-2 at 4. Under "Assertions" the claim specialist stated "severe [front-end] impact." *Id*. at 6. It appears the property damage was considered in the evaluation, although not explicitly tied to a statement that such damage is indicative of more serious injuries. I cannot find that this evidence supports an extracontractual remedy.

Second, Plaintiff argues that the sequence of offers by Defendant ($1,281.75/$4,036.75/$1,100.00/$1,100.00), especially the adjustment downward from the second to third offer in light of alleged additional medical bills submitted by Plaintiff totaling $26,404.25 (up from $6,848.75), demonstrates unreasonable conduct. The weight of authority in this District appears to be that an insurer's settlement offers "are relevant to issues of bad faith and unreasonable delay or denial." *Toy v. Am. Fam. Mut. Ins. Co*., No. 12-CV-01683-PAB-MJW, 2014 WL 321213, at *9 (D. Colo. Jan. 29, 2014). *See Sanderson*, 251 P.3d at *1220-21* (discussing settlement offers in context of whether insurer's conduct was reasonable); *Anderson v. Am. Nat'l Prop. & Cas. Co*., No. 17-cv-03016-REB-KMT, 2018 WL 10609649, at *3 (D. Colo. Feb. 9, 2018) (holding that evidence of bad faith and settlement offers are permitted in bad faith claims*); Jones v. Am. Fam. Mut. Ins. Co*., No. 16-cv-02084-CMA-MEH, 2018 WL 11014338, at *1 (D. Colo. Jan. 10, 2018) ("[E]vidence related to settlement offers . . . appears relevant to Plaintiff's claims of bad faith and statutory delay."); *Steinert v. Mountain States Mut. Cas. Co*., No. 07-CV-01454-REB-MJW, 2008 WL 2782733, at *3 (D. Colo. July 8, 2008) ("It is true that evidence of Mountain States' settlement offers likely is not admissible concerning most of the plaintiff's claims, but is relevant and admissible concerning the bad faith claim. . . ."). There is contrary authority. *Etherton v. Owners Ins. Co*., No. 10-cv-00892-PAB-KLM, 2013 WL 68702, at *8 (D. Colo. Jan. 7, 2013); *Southwest Nurseries, LLC v. Florists Mut. Ins., Inc*., 266 F.

Supp. 2d 1253, 1258 (D. Colo. 2003). I will consider Defendant's settlement offers in determining whether Plaintiff has a triable issue of fact.

Third, Plaintiff argues that Defendant unreasonably relied exclusively on Dr. Howard's report and ignored the report from Dr. Bainbridge. Resp. at 9. He cites Plaintiff's Exhibit 2 and 3, which are Dr. Bainbridge's assessment of Plaintiff and Plaintiff's disclosed opinions by Dr. Bainbridge respectively. ECF 26-2; 26-3. Defendant points to a note by the claim specialist which quoted Dr. Bainbridge (without attribution) concerning the L4-5 injury (mild facet joint arthropathy) being "permanent" and "related to MVA," whereupon the claim specialist questioned how degenerative arthritis could be related to a motor vehicle accident. ECF 24-2 at 3. The extent to which Defendant took into account Dr. Bainbridge's findings may be relevant to the claims in this case. *See Vaccaro,* 275 P.3d at 760 ("Particularly in light of plaintiff's theory that defendant requested—and then ignored—the [independent medical examiner] report, a reasonable jury could have found that defendant refused to consider evidence showing plaintiff was entitled to additional compensation.").

Fourth, Plaintiff argues that Defendant took an adversarial approach to handling Plaintiff's claim. Resp. at 10. He cites Plaintiff's Exhibit 6 and Defendant's Exhibit A-5, which are communications between Plaintiff and Defendant regarding the settlement of Plaintiff's claim. ECF 26-6; 24-5. Defendant argues that first-party disputes are by their nature adversarial. Reply at 7. "First-party actions are adversarial in nature; therefore, it is impossible for the insurer to act as a fiduciary for its opposing contractee. . . . [A]n insurer owes competing duties to its policyholders and other shareholders not to honor meritless claims." *Bailey v. Allstate Ins. Co.*,

844 P.2d 1336, 1339 (Colo. App. 1992). The mere fact that there was an adversarial posture does not establish bad faith or unreasonable conduct, but the extent to which an insurer might have taken an overly adversarial tone or approach may be relevant in this case.

Fifth, Plaintiff argues that Defendant's refusal to enter into a tolling agreement with Plaintiff three weeks prior to the expiration of the statute of limitations was unreasonable. Resp. at 10-11. He cites Plaintiff's Exhibit 1, which includes an email from the Plaintiff to Defendant dated October 1, 2021, requesting a tolling agreement. ECF 26-1. Plaintiff notes in that email that the statute of limitations for the claim is set to expire on October 24, 2021. *Id.* Plaintiff also cites Defendant's Exhibit A-5, which contains an email from Defendant to Plaintiff wherein Defendant refused to enter into a tolling agreement. ECF 24-5. Defendant argues that Plaintiff did not "identify a legal obligation or an insurance standard requiring the tolling of the statute of limitations." Reply, ECF 28 at 8. At least one judge in this District has found that refusing to enter into a tolling agreement can be evidence of wrongful conduct in this context. *Geoffroy v. Amica Mut. Ins. Co.*, No. 16-cv-01736-MSK-KMT, 2017 WL 11545772, at *3 (D. Colo. Dec. 1, 2017) ("The Court agrees with the Geoffroys and the Magistrate Judge that the Geoffroys have adequately alleged facts that would show that Amica's rejection of the tolling agreement could be considered to be 'willful and wanton conduct.'").

Finally, Plaintiff argues that Defendant failed to make any *Fisher* payment to Plaintiff. Resp. at 14. *See Fisher v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 985, 990–92 (Colo. App. 2015) (A "*Fisher* payment" refers to a payment of "a covered benefit" under the policy in question, notwithstanding that other components of an underinsured motorist ("UIM") claim may

remain subject to reasonable dispute). Regarding Defendant's failure to make a *Fisher* payment and its relevance to the reasonableness of Defendant's conduct, Plaintiff cites to Plaintiff's Exhibit 9, which is a Colorado state district court decision. ECF 26-9. Defendant contends that the record fails to establish that Defendant viewed any amounts as undisputed. Mot. at 8. I am unaware of any decision of a Colorado appellate court on this issue. *See Hallaren v. Geico Cas. Co.*, No. 20-cv-03562-NRN, 2021 WL 4133915, at *10 (D. Colo. Sept. 10, 2021) (rejecting Colorado state district court decisions and stating that "under Colorado law, an insurer's internal claim evaluation of non-economic damages is not evidence of an undisputed amount which must be paid per the reasoning in *Fisher II*").

Does the record establish that Defendant admitted that any of Plaintiff's damages are "covered benefit[s]?" *See* Colo. Rev. Stat. § 10-3-1115(2). In this District, several courts have found that neither a settlement offer nor an insurer's evaluation may be considered to prove an undisputed portion of an insured's claim. *Hallaren*, 2021 WL 4133915, at *5 (agreeing that "public policy weighs in favor of prohibiting the exclusive use of a claim evaluation to prove the existence of an undisputed amount of noneconomic damages so as to require a *Fisher* payment."); *Nyborg v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-01918-RM-KLM, 2021 WL 662305, at *6 (D. Colo. Feb. 19, 2021) ("Unlike economic damages such as those associated with [Plaintiff's] medical bills, there is no sum certain to which an insured is entitled for non-economic damages, which is indicative of the fact that there was a 'legitimate dispute' over the value of such damages.").

Here, while Plaintiff does not rely exclusively on Defendant's evaluation or settlement offers to assert unreasonable denial of covered benefits, he does rely on his own submissions of medical bills to prove the existence of an undisputed claim. Resp. at 6; ECF 26-4. However, the mere fact, standing alone, that an insurer did not reimburse its insured for the full amount of his medical bills does not establish that it acted unreasonably." *Albrandt v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-01926-RM-NYW, 2021 WL 5140283, at *2 (D. Colo. Nov. 4, 2021). Because the parties dispute the economic damages suffered by Plaintiff, I cannot find that a *Fisher* payment should have been made.

### III.     Need for Expert Testimony

Defendant argues that Plaintiff's statutory claims cannot survive summary judgment because Plaintiff provides no evidence in the form of expert testimony to establish an insurance industry standard for how an insurer must handle an insured's claim. *See* Mot. at 2-3; Reply at 10. Indeed, Plaintiff admits that his claims rely on the "common knowledge and experience of ordinary people" to establish insurance industry standards for good faith and fair dealing in this case. Resp. at 7 (quoting *Am. Fam. Mut. Ins. Co. v. Allen*, 102 P.3d 333, 344 (Colo. 2004)). While expert testimony may certainly suffice to establish a standard of care, the narrow issue here is whether expert testimony is *required* to establish a standard of care for the bad faith claims asserted by Plaintiff. *Peden*, 841 F.3d at 890-91. Even under the caselaw cited by Defendant, "[i]f the reasonable investigation and denial of an insured's claim is within the common knowledge and experience of ordinary people, then expert testimony is not required." *Allen*, 102 P.3d at 344. In that case, the Colorado Supreme Court found that "[t]he reasonableness

of an insurer's investigation into the underlying events of an automobile insurance claim is not a technical question and does not require additional professional training beyond the knowledge of the average juror." *Id.* at 345.

Similarly here, the Court finds that the standard of care for Defendant's handling of Plaintiff's claim is within the common knowledge and experience of ordinary persons, or at least established in Colorado law. *Peden*, 841 F.3d at 890-91. And, because "the tort of bad faith breach of an insurance contract encompasses an entire course of conduct and is cumulative" in Colorado, the jury may consider the correspondence between Defendant and Plaintiff's counsel, the verified notes of Defendant, and other documents to determine whether Defendant handled Plaintiff's claim reasonably. *Dale v. Guar. Nat. Ins. Co.*, 948 P.2d 545, 551 (Colo. 1997).

## IV.   Debatability

Defendant relies on the debatability of Plaintiff's claims to assert that it acted reasonably as a matter of law. Mot. at 10. However, the debatability of a claim is not dispositive as to whether an insurer reasonably evaluated an insured's claim. Fair debatability of a claim's value "'is not a threshold inquiry that is outcome determinative as a matter of law.'" *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1226 (10th Cir. 2016) (quoting *Vaccaro*, 275 P.3d at 759-60). However, it is a "factor to be considered in a broader evaluation of whether an insurer acted reasonably." *Nibert v. Geico Cas. Co.*, 488 P.3d 142, 147 (Colo. App. 2017).

## V.     Triable Issue

The lack of an industry standards expert, the modest injury and medical expenses here, the fact that Plaintiff has already recovered $25,000.00 from the tortfeasor, the fair debatability of the claim, and the fairly narrow range of Defendant's settlement offers (even in light of the fact that they changed over time) make this an understandable fact scenario for the Defendant to assert that Plaintiff has not met his burden regarding the extracontractual claims. The common law claim demands an additional step of proving knowing or reckless disregard, beyond what is required for a statutory claim of unreasonable denial. *Peden*, 841 F.3d at 890 n.3. I do not believe the evidence in this record can sustain a common law claim. But for the reasons described above, there are issues of fact concerning the reasonableness of Defendant's handling of the claim.

## **CONCLUSION**

Considering the record, it establishes a genuine dispute of material fact concerning whether Defendant acted unreasonably in denying Plaintiff's claim, but just barely for purposes of summary judgement. There is no genuine dispute of material fact, however, concerning whether Defendant violated the common law duty of good faith and fair dealing. Accordingly, the Court denies summary judgment as to Plaintiff's second claim, but grants summary judgment as to Plaintiff's third claim (and fourth claim, as it is redundant of the second claim)**.** The Court **denies in part and grants in part** the Defendant's Motion [filed August 18, 2022; ECF 24].

Respectfully submitted this 10th day of November, 2022, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge